

In the

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MONTANA

BILLINGS, DIVISION

**FILED**

SEP 11 2018

Clerk, U.S. Courts
District Of Montana
Billings Division

PETITION FOR WRIT OF HABEAS CORPUS

CODY WAYNE JOHNSTON,

Petitioner,

vs.

JAMES SALMONSON,

Montana State Prison Warden

Respondent,

| Cody Wayne Johnston<br>A.O. #3020512 | ) ) ) ) ) ) | Confined at :<br>Montana State Prison<br>700 Conley Lake Rd.<br>Deer Lodge, MT 59722 | ) ) ) ) ) ) | Cause No:<br><br>Date Filed: |

The Petitioner brings forth this Petition for Writ of Habeas Corpus based on the following claims with the exculpatory exibits attached that substantiate and prove these claims and the violations to the Petitioners Constitutional Rights.

    1) Actual Innocence, Insfficiency of Evidence,

    2) Malicious Prosecution/ Misconduct,

    3) Ineffective Assistance of Counsel.

Supported by the United Staes Constitution caselaw and the Constitution of the United States and Montana.

Submitted this 28 day of August ,2018. *Cody Wayne Johnston*

                                                              Cody Wayne Johnston.

COVER

## INTRODUCTION

COMES NOW, Cody Wayne Johnston, the Pro Se Petitioner in the above entitled cause, to respectfully Petition this Honorable U.S. District Court for relief from the wrongful imprisonment of the Petitioner in accordance with the United States Code 28 USC §2254, Writ of Habeas Corpus - Prisoner in State Custody. The Petitioner seeks this courts determination that this custody violates the U.S. Constitution, laws and treaties of the United States, now and in the future, as per 28 USC §2241.

The Petitioner, hereby claims that the State of Montana, in its Seventh Judicial District Court, Cause No: DC-15-92, State of Montana v Cody Wayne Johnston, did knowingly deny the Petitioner his Right to Due Process as is guaranteed to each citizen under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.

The Petitioner has tried to have this matter reviewed by the State Courts in state Habeas Corpus proceedings in the Montana Supreme Court, Cause No: OP 18-0367, which was denied do to the Petitioner's Appeal still before the Court. This ruling is contrary to state legislative law under Montana Codes Annotated §46-22-101, Availability of Writ- Applicability of writ of Habeas Corpus §(2), stating: "The Writ of Habeas Corpus is not available to attack the validity of the conviction or sentence of a person who has been adjudicated guilty of an offense in a court of record and has exhausted the remedy of appeal."

The Petitioner filed his state Habeas Corpus in the Montana Supreme Court as is allowed during appeal, as is stated in the above statute. The Petitioner filed his state Habeas Corpus Pro Se and as a seperate action than his appeal as is correct. The Montana Supreme Court denied the Petitioner's state Habeas Corpus because the Petitioner was represented by counsel in the seperate action of appeal. Their is no Montana code that states that a citizen must use the same attorney in all actions before a court. The State Appointed attorney for the Appeal made it very clear that the Montana Office of Appellate Counsel does not handle anything but appeals and that the Petitioner can file his own Petition for Writ of Habeas Corpus as a Pro Se litigant as is stated by the Montana statute above. The Petitioner filed his state Habeas Corpus to the Montana Supreme Court in a timely mannner and with the exact same claims of Constitutional violations as are contained herein. The Montana Supreme Court was given a fair presentation of the merits contained herein, and in violation of state statute refused to consider the merits.

The U.S. Supreme Court has held that a Habeas Petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal

or collateral proceedings, before a federal court will consider the merits of these claims. Rose v. Lundy, 455 US 509, 519-20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "as a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claims to the appropriate state courts...in the manner required by the state courts, thereby 'affording' the state courts a meaningful opportunity to consider allegations of legal error". Casey v Moore, 386 F.3d 896, 915-916(9th Cir. 2004)(quoting Vasquez v Hillery, 474 US 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598(1986).

The Petitioner followed the state rules and did not procedurally default, and has raised all of the claims at the state's highest level, only to be denied Justice.

This Habeas Corpus contains evidence that the state knew that the alleged victim for which the State claimed and charged the Petitioner with deliberate homocide, was " STILL ALIVE". This Habeas Corpus contains evidence known to the prosecutors that the alleged victim had been seen by multiple witnesses and she identified herself many days after the alleged date of the homicide...the State did not at any time have any proof of the alleged victims death or murdered on the date alleged and to this day has not proven that she is dead through a death certificate and that the State knew the alleged victim had much later changed her address and was recieving her Social Security benefits at the new address long after the victims alleged demise.

The U.S. Supreme Court has stated that a petitioner must show "Cause and Prejudice for the failure to present the constitutional issues to the state court, or makes a colorable showing of actual innocence." Gray v Netherland, 518 US 152,162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); Sawyer v Whitley, 505 US 333. 338, 112 S.Ct. 2514, 120 L.Ed.2d.269(1992); Murray v Carrier, 477 US 778, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397(1986).

The Petitioner believes that the presentation of evidence that a alleged victim of a homicide being alive, clearly qualifies as a "Colorable Showing" of the Petitioner's Actual Innocence... and that the Montana State Supreme Court has violated and ignored state statute, that states that the Montana State Supreme Court review a Habeas Corpus during appeal. The Petitioner presented the merits, facts and exibits fairly to the State Court, and the Petitioner brings forth this matter now to this U.S. District Court at this time as the Federal courts have allowed in the 'Interest of Justice'

The Petitioner is also presenting documentation that the Petitioner wrote the State Trial Court of this withheld evidence and that trial Court Judge Elizabeth Best ordered that the letter and the evidence(that was suppressed by the state that the state had knowledge that the alleged victim was alive) be interpreted as a Petition for Post Conviction Relief. Judge Best had assumed jurisdiction of this matter at the

invitation of Judge Katherine Bidegary who had been recused by the State, and lost jurisdiction. Judge Best ordered the appointment of counsel to the Office of Public Defenders also upon the interpretation of Post Conviction Relief, pursuant to Montana Codes Annotated §46-21-201 ans §47-1-104(4)(a)(v).  The Petitioner filed with the Court and Judge Best, 'Motion for the Immediate Commencement of a Evidentiary Hearing' based on the 'Miscarriage of Justice' doctrine in Schlup v Delo, 115 S.Ct. 851 (1995), and most recently House v Bell, 547 US 518, 537-38, 126 S.Ct. 2064; 165 L.Ed.2d 1(2006). The Public Defender made 'Motion to Rescind the Appointment of PostConviction Counsel' and had that order signed by Judge Katherine Bidegary, who does not have Jurisdiction over this matter. Judge Bidegary ordered the dismissal of the PostConviction matter and hearing, in violation of Montana law as held by the Montana Supreme Court in its Jordan v State, 2007 MT 165, ¶11, " The sentencing judge constitutes the judge with the most familiarity of the testimony, briefs, motions and trial court records... The sentencing judge should preside over the subsequent post conviction proceeding", quoting Coleman v State, 194 Mont. 428, 633 P.2d at 628(1981), that " the strongest showing of materiality and unavailability of evidence sought to be adduced from the sentencing judge." This PostConviction was Cause No: DV-18-108 for the Petitioner.

The Petitioner complied with the requirements of §46-21-101(1), yet another Judicial Court Judge who was recused in this matter and who did not have jurisdiction over matter ordered that this matter be dismissed. Judge Best possessed the most familiarity of the testimony, briefs and trial records, and held jurisdiction over this matters underlying criminal action. The Petitioner filed a notice of appeal on this illegal dismissal by Judge Bidegary. The Clerk of Court for the Montana Supreme Court will not allow this issue to be appealed to the Montana Supreme Court and has returned all of the documentation that the Petitioner attached. This documentation is attached to this Petition in its exibits in the Appendix of this Petition.

The Petitioner has tried every avenue available to him to have this wrongful and illegal incarceration of a Actually Innocent man to be heard at the State level. The State has ruled contrary to established State and Federal Law in the Petitioners Appeal, ruled contrary to State law in the Petitioners Petition for Writ of Habeas Corpus;(at the state level),and the state has dismissed the Petitioners PostConviction Relief by a State Judge without jurisdiction, and the States Highest Court will not allow the Appeal of this PostConviction to be filed.

The Petitioner has clearly been diligent in trying to have this matter heard on all of the state offered Post Conviction type methods of correcting a wrongfull and illegal conviction....exhausting all means of relief. The Petitioner must now present this to the federal court system for relief.

## JURISDICTION AND VENUE

¶1        This Habeas Corpus action is authorized by 28 USC § 2254 to redress the unconstitutional imprisonment of a State held inmate, by the deprivation of the rights secured by the Constitution of the United States. This Court has jurisdiction under 28 USC § 1331 and §1343 (a)(3). The Petitioner seeks relief from imprisonment that was obtained through inconstitutional acts and omissions committed by the State of Montana and the Respondents pursuant to 28 USC §2254 (d)(1) that resulted in a decision contrary to established Federal Law and State Law to be followed as determined by the Supreme Court of the United States or (2) resulted in a decision based on a unreasonable determination of the facts in the light of the evidence presented in the State Court Proceedings.

¶2        The District of Montana, Billings Division, is the appropriate venue under 28 USC §1391(b)(2) because it is where the events giving rise to the Petition occured.

¶3        The Petitioner, is a prisoner of the State of Montana in the custody of the Montana Department of Corrections. Johnston is being illegally incarcerated at the Montana State Prison in Deer Lodge, Montana (MSP). The Respondent James Salmonson is the Warden at the Montana State Prison and is legally responsible for the operation and imprisonment by the State of Montana, with authority to release a inmate from custody, upon order of this court as per 28 USC §2254.

## FACTS

¶4        On Febuary 13, 2013, the Petitioner spoke with Rimrock Treatment Center in order to verify if Nicole Waller can be accepted as a patient to help her recover from her severe opiod addiction. Ms. Waller spoke with Rimrock on the phone ot confirm the details of treatment. During the call Ms. Waller changes her mind and refuses to obtain the needed treatment. Later that day the Petitioner tells Ms. Waller that he can not take her drug use any longer and that if she is not willing to get treatment, she will have to psck and leave. The Petitioner states to her he will not ask to be repaid any of the money owed him for her car payments and other loans if she leaves and goes back to Kalispell amiabely. She had broken up previously and went on drug binges in which she had done many malicious things, such as unplug a frezzer of meat. Another time she returned claiming to be pregnant with the Petitioners child. This was proven false when the Petitioner found out the 'ultra-sounds' were actually from her previous pregnancy with her daughter. Ms. Waller refused treatment then also, when she claimed she had a miscarriage. A friend of Ms. Wallers, Mark hines confirmed to law enforcement and the Petitioner that the 'ashes' of the baby were actually the ashes of a pet. This and other acts are confirmed as a string of deceptions, even

¶5     throughout her present marriage, to Jason Waller, and her opiod addiction resulting
in Waller's daughter being put in treatment.   Jason Waller has had custody
of the children, with the daughter having mental problems from Ms. Wallers opiod
addiction . The daughter was hit by a car in 2012 due to Ms. Wallers negligence and
Ms. Waller tried to defraud a insurance company for more money by a false medical
claim. The daughter was actually found to be physically and medically fine. These are
the proven acts that caused the Plaintiff to request that Ms. Waller leave the residence.
The Plaintiff went back to work this day, 2/13/13, after her refusal of treatment and
the Plaintiff requesting that she leave since she wouldn't get treatment. Ms. Waller
called the Plaintiff at work to state she was still packing and need more time. The
Plaintiff agreed she could stay and that he would stay with a friend Jim Renner that
night. The Plaintiff and Mr. Renner went to dinner at a restaurant and the Plaintiff
stayed that night in Mr. Renner's camper.

¶6    The next day, Febuary 14, 2013, Ms. Waller called the Plaintiff at 7:00am stating that
she had friends at the house and they were going to Sidney, MT to find him and kill
the Plaintiff if the Plaintiff made her leave the house. Ms. Waller made many threats
on the phone that the Plaintiff had supplied her, 406-885-0374. The Plaintiff later
learned from Ms. Wallers friend, Mr. Hines, that she had another phone that she used
to make opiod drug deals with. The Plaintiff left work and went to the home later that
day to investigate whether Ms. Waller was being truthful about the people at his home.
Cell Phone records and witness statements confirm that the Plaintiff was only at the
home for 12 minutes. During that time the Plaintiff saw no other vehicles other than
Ms. Wallers Ford Expedition in thr driveway. The Plaintiff locked the doors and disabled
the garage door to ptotect his property and returned to work at Parka, Inc. in Sidney
Montana. The Plaintiff was sure that Ms. Waller had gone off with another man as she
had in the past whenever a relationship ended. The Plaintiff called a friend named
Bill Sorteberg and talked with him and decided to take the day off and with the help
of Mr. Sorteberg move Ms. Wallers Ford
With Ford and then meet Mr. Sorteberg on the highway by his home. Mr. Sorteberg then
followed the Plaintiff to just past Poplar, Montana where the fanbelt broke. The Plaintiffs
cell phone was off at that time. At this time the Plaintiff found Ms. Wallers cell
phone that she had called him with earlier. The Plaintiff and Mr. Sorteberg left
the Ford of Ms. Wallers in Poplar with her belonging. Mr. Sorteberg and the Plaintiff
went back to the Plaintiffs home, going thru Culbertson, MT, stopping at the John
Deere dealership, and also stopping to pickup Mrs. Sorteberg before they dropped the
Plaintiff off at his home. Mr. and Mrs. Sorteberg then went on to Williston, ND to
go shopping.

The Plaintiff went into his home and checked to make sure all was still undisturbed and secure and then called Amber Fleming from his home. Afterwards the Plaintiff drove back to work in Sidney and worked until 7:00pm. This is also verified by cell phone records and use. The Plaintiff then went back to his home to check on his home again, and from their drove to James Murray's home to check on Mr. Murray's home in Lambert, Mt, 35 miles away. Mr. Murray is a friend of the Plaintiff's who is a long haul trucker, and who the Plaintiff always checked on his home while MR. Murray was out hauling freight. Again this is all verifiable and confirmed with cell phone records.

¶7   The following day the Plaintiff got to work at about 7:00am and spent the entire day working with Mr. Cody Demott, working until 7:00pm. The Plaintiff was with Mr. Demott to pick up a broken down pickup truck and tow it from Tioga, ND back to Sidney, MT. They afterward went to Pacific Steel and Recycling to load a load of steel, and deliver it back to work and then unload the steel. The Plaintiff and Mr. Demott discussed the problems of life and what was happening in both of their lives, and the problems that a opiod addicted woman can cause. And the extreme extent Ms Waller had gone to in order to keep the relationship with the Plaintiff. During the day the Plaintiff spoke to Amber Fleming and made arraignments to meet Mr. James Murray in Lambert at his home. That night Amber Fleming came to the Plaintiffs home, showered and when the Plaintiff got home, they went to dinner in Sidney, MT and then drove to Lambert and was with Mr. Murray until midnight, when they returned to the Plaintiffs home. Ms. Fleming stayed the entire weekend with the Plaintiff at his home, leaving him, on Sunday night. The Plaintiff went back over to his friend James Murrays that night and watched a movie and then went home. This is all verified by cell phone evidence, and by the statements of Ms. Amber Fleming. The Plaintiffs where abouts from 2/13 thru 2/17 are well documented and proven.

¶8   Throughout the day on Febuary 18. 2013, the Plaintiff was at work all day as is also proven on the company record.

¶9   On Febuary 19th, 2013, Richland County Detective, Bob Burnison, calls the Plaintiff from the Richland County Sheriff's office. The Plaintiff is asked to meet with Burnison at the office. The Plaintiff agrees and begins driving to the sheriff's office. As he is driving, the detective calls many more times, even once the Plaintiff is in the parking area by the sheriff's office. The Plaintiff is immediately placed in a room for interigation, and agrees to a DNA test/ swab as well as willingly gives detective Burnison his cell phone for examination. Burnison states the phone will be returned in  few minutes. This is all done prior to the Plaintiff being told why he is being questioned. Burnison demands that the Plaintiff take a lie detector test and states that if the Plaintiff needs a lawyer, it means he (the Plaintiff) is guilty.

The Plaintiff tells the detective that he wants a lawyer present and will contact
attorney Luke Savage. The detective then tells the Plaintiff that Ms. Nicole Waller
has disapeared and that they 'Believe' and 'have reason to believe' that the Plaintiff
has knowledge of 'her kidnapping and murder', from 'sources close to her are certain
that he [the Plaintiff] is responsible'.

¶10   The Plaintiff returns to work, and continues to work every day from Febuary 19th,2013
through the night of Febuary 21st, 2103. The Plaintiff made a call to Amber Fleming
and made arraignments to spend the weekend in Kalispell, Montana, leaving that night
to go to Amber's mother's home. Detective Burnison calls the Plaintiff and states that
he has intercepted a call and found out that the Plaintiff is going to Kalispell.
Burnison calls many times during the day, harassing the Plaintiff over Ms. Wallers
'disapearance' and 'likely murder'. The detective tells the Plaintiff that when they
arrive in Kalispell that they are to call Flathead County detective Geno Cook, and
that Cook 'has your number'. Burnison calls the Plaintiff once more just as they leave
for Kalispell. The roads are slick in spots as they drive. Cook calls many times as
they are driving and sometimes knows were they are and sometimes demands to know,
and made a statement 'where are you? I lost you'. They finally arrive in Kalispell
at 11:00pm and call Cook stating that they are tired and will see him in the morning.
Cook states 'NO, you will come straight to the sheriffs office, NOW'. Cook meets them
at the sheriff's office door and immediately begins harrassing both the Plaintiff and
Amber about Ms. Waller and her disapearance. Repeatedly asking the same questions and
stating 'we know you did it, just admit it...where is she...her body?'. Cook does this
for hours until 2:30 am, examing their phones and making crude remarks as they leave
about them and 'we got you'. Amber and the Plaintiff went then to Amber's mothers home.

¶11   Cook did not bother them the next day, the 22nd, but started calling again on the 23rd,
demanding another interview. The Plaintiff and Amber agree, and begin to shower and
dress when multiple police and sheriffs vehicles arrive at Amber's mother, Marcia Flemings
home. The plaintiff is roughly handcuffed and Deputy Kip Tckachyk from Flathead County
Sheriff, barges into the house with Amber only baring a towel.                    They
are taken to the police station and the Plaintiff was read his rights as the police
took his phone, wallet and all personal property. The Plaintiff demanded a lawyer
repeatedly and was told to 'Shut the Fuck up'. The Sheriffs deputy's were searching
and taking items from his truck and placed the Plaintiff and Amber in seperate rooms.
The Flathead Sheriffs deputies kept stating that the Plaintiff was a 'Killer' to
both him and Amber, in these rooms. The Plaintiff stated he wanted to call a lawyer
again and was again told 'I said shut up about that, you ain't getting one'. Amber
is constantly harrassed that the Plaintiff's 'dangerous to her, you should be scared'.

-4-

The Flathead County Detectives and Deputies continue to scream at the Plaintiff and one of them pushed the Plaintiff against a wall and stated 'what did you do with her'. Flathead County did this for over 6 hours, keeping their phones, and their wallets. Only allowing them their cash, keeping everything else. They kept the Plaintiffs pickup truck also. Amber's father picks up Amber and the Plaintiff from the Law Enforcement Center. They have to purchase new phones and are forced to drive Amber's old sports car from Kalispell, to Lewistown and on into Sidney on very slick roads in order to make it back to work. Upon returning to his home, the Plaintiff finds that while he was in Kalispell being harrassed by Cook and Flathead County, that someone has searched and ransacked his home, taking many items that are never listed or returned by the Montana Criminal Investigations Department. The Plaintiff retains attorney Luke Savage, who arranges for the Plaintiff to get his pickup truck back. Amber and the Plaintiff go to Great Falls and get his truck from the state investigation officials. The Plaintiff drive his truck for over 2 weeks and is working on it when he finds a tracking device placed upon it. The Plaintiff takes the device to his attorney, who calls Detective Bob Burnison, to return it to Burnison or Cook or to the State. Whoever placed it under his pickup.

¶112   From Febuary 19th, 2013 through March 15th of 2013, many of the Plaintiffs friends and co-workers are questioned/ interogated by Richland County detective Burnison, by a FBI agent Craig Overby and Montana Criminal Investigations Department (CID) agent, Mark Hillyard. They were repeatedly asked the same questions and harrassed about Ms. Wallers disapearance, and told that the Plaintiff is a 'criminal', 'a killer', and much more..even though the Plaintiff does not have a criminal record and that they have no evidence of a crime, let alone a murder.

¶113   On Febuary 27th, 2013 a lady named Sarah Corbin calls the Helena Police Department and reports sighting and speaking with Nicole Waller in Helena, Montana. Ms. Corbin also calls Sheriff Crawford in Wolfpoint, Montana and tells him that the woman is Nicole Waller, that they recognize her from her facebook photos, and that Nicole was in Helena and that she and another lady picked Ms. Waller up outside of Walmart parking lot and drove Ms. Waller to the bus station. That Ms. Waller changed her mind and that they drove her back to Walmart and dropped he off again. The ladies stated that they saw Ms. Waller get into a red semi truck and leave with that trucker. The ladies stated they were sure it was her and her name was 'Nicole', and that they saw this on Febuary 16th, 2013 at between 2-4:00pm.

¶114   On June 24th, 2014, the Crimestoppers program recieved and logged in a tip, #14-76, that was given by a woman who was the mother of a man named Cory Woods. The woman

stated that her son had confided with his family that Mr. Woods and two of his friends Josh Svennungsen and Seth Svennungsen had Nicole Wallers body and dumped it but had not killed her. This coincides with a statement that was made by a man named Antonio Higuera that was made on the record of Nicole Waller was killed by Native Americans who slit her throat, after a bi-sexual incident.

¶115 On October 17th, 2014, a woman came forward with a report that she and another lady, named Tammie Ceccarelli, had come upon a crime scene at Oches Point in Mckenzie County, North Dakota, in May of 2013, in which they found bloody clothes that they believed invoved Nicole Waller. The Ladies were harrassed by (two) young men at the scene, who later turned out to be Ronnie Hurley's sons. Hurley was a neighbor of the Plaintiffs at the time of Ms. Wallers disapearance.

¶116 Soon afterwards a woman named Angie Not-Telling came forward and stated that Nicole Waller was murdered on the Indian reservation by natives, and that she was robbed and that the natives sexually abused her before killing her and burying her in a shallow grave.

¶117 Later on July 30, 2016, a U.S. Postal service office confirmed change of address form filing by the 'victim', for Nicole Waller, moving her mail from her address in Kalispell at 58 Cottonwood drive, trailer #17, to 18 River Rd in Kalispell. Ms. Wallers monies from Social Security were reactivated on August 10, 2013.

¶118 On August 25, 2015, the Plaintiff was arrested for Homicide, for the death of Ms. Nicole Waller. This was 3 weeks after returning from the Plaintiffs marriage and Honeymoon with Amber Fleming, now Amber Johnston. The couple honeymooned in Ireland. The State of Montana appointed Assistant Attorney General lawyers, Brant Light, Joel Thompson and Ole Olson as 'Special Deputy' Prosecutors for Richland County under the Richland County Attorney Mike Weber. The Prosecutors tried to bring charges originally through the Seventh Judicial Court Judge, Katherin M. Bidegary of Sidney, Montana. Judge Bidegary refused based on lack of probable cause of the crime of Homicide. The State of Montana arrested the Plaintiff for Homicide, with-out proof of a death or the body of Nicole Waller. At this time there still has never been issued a Death Certificate by the State of Montana, for the death of Ms. Nicole Waller. Her death has only been alleged by the State, her death has never been confirmed by certificate or by a State or County coroner. The Facts stated in the above paragraphs contradict the certification of Death. The Plaintiff's arrest warrant was signed for later by Judge Richard Simonton from another county. Judge Bidegary was recused by the State Prosecutors, and later Judge Gregory Pinski recused himself also, without cause. Judge Elizabeth Best of Great Falls was appointed by the State. Two attorney's from the State Major Crimes

Unit were assigned to represent the Plaintiff, Clark Mathews and Casey Moore from the Montana Public Defenders office. The Plaintiff recited all of the previous occurances in ¶1 -¶27 to these appointed attorney's. The Plaintiff was kept in a Richland County Jail cell in solitary confinement for over 2 months without being allowed any of his medications from a much earlier accident.

¶19    The Plaintiff was finally allowed a bond reduction hearing, in which Detective Bob Burnison falsely stated that the Plaintiff owned property and vehicles that the Plaintiff did not own.

¶20    The Plaintiff was placed on trial on October 17th of 2015 and it was scheduled for 7 days. It was over on the 20th. The Plaintiffs lawyers did not present any of the above witnesses or provide any defense. The Lawyers did not do any investigation or use any experts or any evidence. The Lawyers lied to the Plaintiff about the trial strategy, stating that they were going to have all of the above witnesses testify. The Plaintiffs wife Amber was ignored by the attorney's and thought she was going to testify, only was not allowed. The Plaintiffs attorney's place him on the stand and abandoned him to the Prosecution. The Prosecutions only evidence was the tracking of the Plaintiffs phone and heresay evidence, and Ms. Wallers sister stating she did not believe her sister was alive. The defense attorney's did not allow the jury to hear testimony of the ladies that saw Ms. Waller or any of the evidence in paragraphs 23 through 27, of Ms. Wallers sightings and witnesses to her death by possible others. No evidence of death was ever presented. No witnesses were allowed to prove my innocence, and the appointed counsel refused to speak to the Plaintiff, knowing that the State had insufficient evidence for a Homicide.

¶21    The Plaintiff was sentenced to Prison for on January 17th, 2017, and place in Montana State Prison for life plus 10 years for deliberate Homicide and Tampering.

-7-

## CONSTITUTIONAL RIGHTS VIOLATED

The Plaintiff hereby claims that the Defendants did purposely and knowingly violate the following Constitutional Rights that are guaranteed the Plaintiff. The Defendants denied the Plaintiff of the rights written in the following U.S. Constitutional Amendments. The denial of these rights are also criminal in nature as per the RICO statutes.

The Defendants denied and ignored the....

1) Fourth Amendment, which guarantees the right that their must be probable cause to charge a U.S. citizen with a crime.

   ** The Prosecutors ignored the elements of the crime of deliberate homicide by not having a body and having the documented knowledge that after the State accused the Plaintiff of a criminal act, had information that the alleged victim was seen by 2 witnesses. That the victim rode in their car, and that the witnesses saw the alleged victim get into a semi-truck and drive away. These witnesses identified the alleged victim from photographs on Facebook and Missing Person photos. The State Prosecutors had this knowledge as well as other evidence that was exculpatory for the Plaintiff.

2) Fifth Amendment, guarantees the right to Due Process by the Court, Judges and prosecutors and counsel as pertaining to all Courts of the United States.

3) The Sixth Amendment, guarantees the right to competent assistance of counsel. The trial attorney's were deliberately ineffective by...

   ** Refusing to use the information known to them and their investigators and not properly submitting any evidence or witnesses that are beneficial to the Plaintiffs claim of Actual Innocence.

   ** Refused to present the defense as was agreed upon by the Plaintif. Counsel did not present the above fact that the alleged victim was seen alive by witnesses who observed her getting in a strangers semi-truck and leaving days after the victim was alleged to have been murdered by the Plaintiff.

4) The Eighth Amendment, guarantees the right against excessive punishment.

   ** The State was knowingly punished the Plaintiff for a act that the Defendants had no actual proof of a crime and have not produced a body or death certificate.

5) The Fourteenth Amendment is a citizens guarantee that a state judiciary will use the Due Process of Law, give Equal Protection against lawlessness and injustice by the State.

   ** The State denied the Plaintiff his due Process rights by not disclosing to the Jury, and the Judge that the alleged victim had been seen alive and that their was a great possibility the victim was alive, or was at the time and days claimed. That the Prosecutors claims were based on supposition and not facts, beyond a reasonable doubt.

PLAINTIFFS STATEMENT OF CLAIMS

A.   THE Fundamental Miscarrage of Justice.

The Plaintiffs 'Actual Innocence' claim is synonymous with the 'Miscarriage of Justice', as per Murray v Carrier, 477 US 478, 496, 106 S.Ct. 2639, at 2649, 91 L. Ed. 2d 397 (1986).

The exhibits and eye witness statements contained herein prove beyond doubt that the Defendents participated in acts that are a 'GROSS MISCARRIAGE OF JUSTICE' that "no reasonable instructed juror would have found the defendent guilty", as is stated by the U.S. Supreme Court in Schlup v. Delo, 513 US 298, 115 S.Ct. 851 (1995).

If the jurors had been allowed to see the suppressed evidence, the Plaintiff is submitting to the Court, and with a competent attorney to present and argue for the Plaintiff on his behalf....how could a juror not view the suppressed sightings of the alleged victim after the time of her alleged murder? No reasonable juror could condone or rule that the alleged victim was dead when the alleged victim, was seen and had conversations with witnesses who saw her get in the witnesses car then get out of the witnesses car and get into a semi-truck with a stranger and then drive away....days after the alleged victims alleged death.

The Plaintiff was repeatedly asked the state for a death certificate and/ or a coroners report that states the cause of death. The State has repeatedly refused, and infact has stated that their is not any documentation at all that the alleged victim is dead or met her death by another....

As stated previous the State had no evidence and relied upon supposition and the collusion with the State appointed Trial Counsel not to present any evidence of innocence in order to illegally and unconstitutionally convict the Plaintiff.

The State had to go so far as to shop for a Judge to charge the Plaintiff with a criminal charge when the first judge could not find Probable Cause to Charge the Plaintiff.

The Plaintiff meets the precedent needed to prove a Fundamental Miscarrage of Justice claim as stated above, by the U.S. Supreme Court in Murray that further states, "A petitioner [Plaintiff] must demonstrate that a constitutional violation at trial resulted in a conviction of a individual who is actually innocent". The Court will see by the evidence contained in this Supporting Brief, and Declaration of Fact and Exibit that substantiate the Petitioners claims herein and that the Petitioner is Actually 'Factually Innocent'|.

The Plaintiff submits the following claims as violation and denial of the Plaintiffs Constitutional guaranteed rights.

A.   Claims.

Claim #1: Actual Innocence and Insufficency of Evidence.

The State "Must provide a fair and reliable determination of probable cause as a condition for any significant pre-trial restraint from liberty.", as per the U.S. Supreme Court ruling in Gerstein v. Pugh, 420 US 125, 95 S.Ct. at 868-69. The State prosecutors knew that their was no case unless they suppressed the witnesses statements...violating the Fourth and Fourteenth Amendments.

In this matter there was no actual or forensic evidence of a crime, ther must be absolute fairness required as a "Safeguard of Due Process of Law", and that a crime must be proven "Beyond a reasonable doubt" as per the U.S. Supreme Court caselaw in the Matter of Winship, 397 US 358, 25 L. Ed 2d 368, 90 S.Ct. 1068 (1970).

The Insufficiency of evidence is clear by the fact that the State could not produce a body and that the alleged victim was seen later getting into a semi-truck with a stranger. Insufficiency of evidence standards are set by the U.S. Supreme Court as held in Jackson v. Virginia, 443 US 307, 61 L.Ed 2d 560, 99 S.Ct. 2781 (1979), holding that "As an essential of the Due Process guaranteed by the Fourteenth Amendment, no person shall be made to suffer onus of a criminal conviction except upon sufficient proof, which is defined as the evidence necessary to convince a trier of fact beyond a reasonable doubt of the existance of every element of the offense; accordingly a state prisoner who alleges that the evidence in support of his State conviction can not be fairly characterized as sufficient to have laed a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim."

The State did not meet the criteria of the homicide charge as stated in Jackson as cited above. The state did not meet the "Death" element of the Montana Statute, in the States MCA: 45-5-102- Deliberate Homicide, that states at (1) A person commits the offense of deliberate Homicide if:

(a) the person purposely or knowingly causes the death of another human being;

The State did not show any evidence that the Plaintiff knowingly or purposely caused a death. The State did not prove intent or the act of homicide, as is needed to charge and convict a alleged defendent [the Plaintiff].

No one identified the Plaintiff as the person who committed this charge.... the complete lack of logical evidence present in this matter is clear, and also the Prosecutions use of 'Smoke and Mirrors' as is stated in Winship, and did not meet any element of the offence as is needed, as stated in Jackson, shows this Court that the defendents did not have a case with actual evidence...just supposition that did not meet the state statute.

## Claim #2: Malicious Prosecution and Prosecutoral Misconduct.

The actions by the Prosecutors as stated previous herein show that the named defendants knew that their was not actual evidence of a criminal act, yet proceeded with charging the Plaintiff, maliciously and against all standards, as set by the state for prosecution and a prosecutors duties concerning justice and Due Process.

The Prosecutors had knowledge that the alleged victim was seen getting into the semi-truck, and yet continued to charge the Plaintiff. The Prosecutors ignored evidence knowingly and purposely, that "the suppression was prejudicial, because had the information been disclosed, there is at least a reasonable probability that the outcome of the trial would have been different". Comstock v Humpries, 786 F.3d 701, (9th Circuit, 2015), meeting Kyles v. Whitley, 514 US 419, 438, 115 S.Ct. 1555(1995).

The jurors would not have convicted the Plaintiff if the Prosecutors had been honest and supplied to the Court the documentation that the alleged victim was seen after her supposed death, and that this is actually just a missing persons case.

## Claim #3: Ineffective Assistance of Counsel.

The Plaintiffs Trial attorney's had the above documentation and had knowledge that the alleged victim was seen later. The Plaintiffs attorneys did not present this documentation to the jury or the court, these same attorney's did not bring forth the witnesses that are stated in the Complaint as to the Plaintiffs whereabouts during this time. The Plaintiff was abandoned by cousel and sent to the stand without the protection of his counsel to refute the Prosecutions claims and statements.

Trial counsel sat more as second chair to the Prosecution than an advocate for the Plaintiff as State law demands. Thus meeting the Stricland test, against a lawyers standards of reasonableness and prejudice against his client,[the Plaintiff]'

As per Carriger v Stewart, 132 F. 3d 463, 480 (9th Cir. 1997), "when the witheld evidence would seriously undermine...an essential issue...and the evidence has been found to be material". the documents contained herein are very material to this matter, as these documents show that their is evidence that the alleged victim is not dead but hitchhiked on a truck and went somewhere else. Documentation shows that the victim moved and reset up her Social Security and that funds from this was used.

## Claim #4: State Conspiracy by multiple Government Organizations that constitute and meet the Federal Statutes of §1961-65, RICO.

The acts committed above by multiple County Organizations to commit and violate Constitutional rights as stated above meet the criteria for the Plaintiffs claims that the Defendants did knowingly and purposely 'Under the Color of Law' commit criminal and constitutional violations.

ARGUMENT

in SUPPORT OF CLAIMS

The Petitioner's previous claims are substantiated by fact and documentation, that the Petitioner's Constitutional Rights were violated and denied him."The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Medley v Runnels, 506 F.3d 857, (9th Cir 2007). This present case is devoid of evidence to meet the criterion of the offense charged. The State did not prove premeditation or deliberation as is needed per 'Actus Reas' or 'Mensa Rea' standards set by this court. See State v. Colbert,58 Mont. 584, 194 P. 145, (1920). The State has followed this standard for decades as seen.

The State, when charging a offense,"assumes the burden of proving each and every element of the offense". State v. Guill, 2010 MT 69, 355 Mont. 490, 228 P.3d 1152, (2010). The State did not prove that the act of homicide occurred [actus reas], not 'Beyond Reasonable Doubt', as required by In re Winship. The State did not prove that the Petitioner had the intent or premeditation [Mensa Rea],'Beyond a Reasonable Doubt', as required by In re Winship.

In fact the State could not produce the Dead body of the alleged victim Nicole Waller, and could not produce a certificate of her death as is required by law. The single most important element to charge a citizen with the charge of 'Deliberate Homicide' MUST be proof that a human is dead. The State could not do this as required by this Courts own opinion and decisions. In State v. Hansen, 1999 MT 253, 296 Mont. 282, 989 P.2d 338,(1999), this Court stated at ¶28 "A successful criminal prosecution generally requires proof of three distinct elemnts:(1) the occurence of a specific injury or loss (as in Homicide a person deceased...);(2) that someone is criminally responsible for that loss or injury...(3) the identity of the doer of the crime." Hansen further states "In the charge of criminal homicide, it is necessary in the first place by full and substantiale evidence to establish what is technically called the "corpus delicti",--the actual offense committed, that is that the person alleged to be dead, is in fact so....", Hansen at ¶30. The state did not meet this criterion as demanded by this Court. "The State must induce independent evidence tending to establish the death and the fact that the death was caused by a criminal agency". Hansen at ¶36. The State could not meet the criteria of the Death of Ms. Nicole Waller. The evidence contained herein proves that Ms. Waller was not dead on the date alleged, and in fact is still alive and seen by many others days after her alleged demise. This evidence was know by both the State Prosecution and the State appointed Trial attorney during trial and was withheld from the court and jury.

-12-

A long held stance of this Montana Supreme Court is stated in State v Riggs, 61 Mont. 25, 201 P. 272,(1921), "A defendent may not be convicted on conjecture, however shrewd, on suspicion, however justified: on probability however strong, but only upon evidence which establishes guilt beyond a reasonable doubt". "In prosecution for murder, proof of the corpus delicti involves the establishment of the fact that a murder[Homicide], has been committed". The proof of death of Ms. Waller was never established, there has never been documentation of her death as is required by a State or County official, and "proof of death can not rest on the disjunctive", State v Riggs, 61 Mont. 25. "Where an act may be attributed to a criminal act or an innocent cause, it will be attributed to the innocent rather than the criminal", per Riggs. The State can not state how, or even if she died...and in fact had the knowledge she was still alive after her alleged 'death'.

This Court also held in State v. McCarthy, 36 Mont. 226, 92 P. 521(1907), that if "there is no substanial evidence to support the verdict, a different rule applies. In the latter case it becomes the duty of the trial court, as a matter of law, to vacate and set aside the verdict, and, if it refuses to do so, its action will be held erroneous." The Trial courts verdict is clearly erroneous based on the evidence contained herein that the State intentionally suppressed from the Jury. Evidence that if presented properly by a competent trial counsel would have brought about a completely different verdict.

The Suppression of favorable evidence is prejudicial if that evidence was "material" for 'Brady' purposes. Stricker v Greene, 527 US at 282. Evidence is "material" if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id at 290 (citing Kyles v Whitely, 514 US at 435). To establish materiality, a defendent need not demonstrate "that disclosure of the suppressed evidence would have resuilted ultimately in [his] acquittal." Kyles at 434. Rather the defendent need only establish "a'reasonable probability' of a different result." United States v. Bagley, 473 US 667, 678, 105 S.Ct. 3375, 87 L. Ed 2d 481(1985). A "reasonable probability" exists if " the government's evidentiary suppression 'undermines confidence in the outcome of the trial." Bagley at 678. The State's case hinged on the fact Ms. Waller could be assumed to have been murdered on the Febuary 13, 2013 date. But these prosecutors could not produce proof of death and had in fact, proof of life after the alleged date of death. THis must be construed as prejudicial to the Petitioner...by either the State or Defense Counsel. Meeting the requirements of either a Brady Violation and/or the 2 prongs of Strickand. Either way the exibits enclosed, if shown the jury would have resulted in at least one juror voting for acquittal.

In State v Pepo, 23 Mont. 473, 59 P. 721(1900), this court held the foundation of all subsequent rulings concerning the issues in this present matter by stating,

"No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed, and the fact of the killing by the defendent as alleged, are established as independent facts."

The State, at no time met the above criteria to charge or convict the Petitioner of Homicide. The State did not have proof that the alleged victim was dead, and in fact had knowledge that the alleged victim was alive and seen by eye-witnesses that the victim was alive and hitchhiking many days after the victims alleged demise.

The State, at no time established either 'Mensa Rea'[Mental Intent] nor the other element 'Actus Reus'[the Guilty Act] of the offense of Homicide. The State used only supposition and innuendo, when presenting the State's only evidence, and that being the phone records that do not meet either of the above two essential elements of a person committing any offense in the Montana criminal statutes.

Most recently the United States Supreme Court ruled on June 22, 2018, in the case of Carpenter v United States, cause no: 16-402 that the governments acquisition of Carpenter's cell site records was a Fourth Amendment search and that under the Fourth Amendment, it protects not only property interests, but certain expectations of Privacy as well. The U.S. Supreme Court ruled that when an individual "seeks to preserve something as private," and his expectaction of privacy is "one that society is prepared to recognize as reasonable," then any official intrusion into that sphere generally qualifies as a search and requires a warrant supported by probable cause.

The Flathead County Sheriff's department, on Febuary 23, 2013, removed the Petitioner and his then fiance Amber from the home of Amber's parents in Kalispell Montana and were taken to the Flathead County Sheriff's Department. The deputies seized the Petitioner and Ambers personal property including their cell phones and wallets and the Petitioner's 1997 Dodge Ram 2500 pickup.

On Febuary 26th, 2013, Flathead Detective Kipp Tkachyk files for a application for a search warrant...3 days after he had illegally detained the Petitioner and Amber...conducting a illegal search of his property...violating his Fourth Amendment rights.

Three days after detective Tkachyk seized and searched the Petitioners property, Tkachyk applied for a search warrant of this property, stating on the application that he "conducted analysis of teh activity of Nicole's and Cody's cellular telephone with verizon wireless..." Tkachyk then advised the Petitioner that the same cellular towers in Fairview, Montana activated inbound calls to Nicole's(the alleged victim)

-14-

cellular phone, and further that The alleged victim and the Petitioner's cell phone were triangulated to approximately the same location on Febuary 14, 2013 at 7:37am. Detective Tkachyk stated that this information was obtained on Febuary 16th and also Febuary 18th of 2013. This information was obtained more than a week prior to the Detective Tkachyk applying for a search warrant authorizing the search of the cell phones.

The warrant was issued on Febuary 27, 2013 in the 11th Judicial District of Montana, in the County of Flathead, to search:

1) Call detail records from cell phone numbers 406-885-0374 and 406-480-7034.
2) Cell· site location "pings" for call detail records from given cellular numbers.
3) SMS/text message details and picture content details from given cell numbers.
4) Account holder names and billing address for the numbers.
5) RTT Real Time Transfer/Radio Transmission technology, cellular site locations and towers utilited shen call or texts were placed.

The evidence used for 'Probable Cause' had been obtained illegally from the cell phones many days prior to applying for the search warrant. Detective Tkachyk swore on a oath in obtaining the search warrant about information he had already illegally obtained. This, violates the Petitioners constitutional rights as per Carpenter v United States as ruled on by the U.S. Supreme Court only a few months ago on June 22, 2018.

This information was used as the Probable Cause to order the Petitioner to be charged with homicide. This, was the only evidence brought forth by the State to use to convict the Petitioner.

Thus under Carpenter this information was illegally obtained to be used as the State's Probable Cause affidavit of information, violating the Fourth Amendment.

This evidence does not prove the Petitioner committed a crime as stated through out this Petition.

In Pepo it further states that "the former by direct evidence", meaning that their must be proof of a death, which the State did not meet and in fact the State had information the alleged victim was alive well after the alleged date of death. Pepo further stated the very basis of the Petitioner's arguement, "Where the verdict does not have the same meritorious support from the evidence, it will be set aside and disregarded." Quoting Smith v Belshaw, 89 Cal. p 427. The above ruling by the Montana Supreme court follows with the 'Mensa Rea' and 'Actus Reus' doctrine elements that must be met by law. The State did not, nor could the prosecutors meet these elements and used illegal means to obtain information from the Petitioners cell phone that proves nothing nor meets any of the elements as demanded in Medley.

-15-

Most recently the Montana Supreme Court stated in Marble v State, 2015 MT 242, 380 Mont. 366(2015), that the evidence must indicate that a new trial has a reasonable probability of resulting in a different outcome", and "the claim, if proved and viewed in light of the evidence as a whole, must establish that the Petitioner did NOT engage in the criminal conduct for which the Petitioner was convicted." Under MCA: §46-21-102(2), as quoted in Marble, statute states that:

"a district court presented with a postconviction petition based upon 'Newly discovered evidence' shall utilize the very test set forth in §46-21-102, MCA. It shall determine whether the newly discovered evidence..., if proved and viewed in light of the evidence as a whole would establish that the Petitioner did not engage in the criminal conduct". Wilkes v State, 2015 MT 243, 380 Mont. 388.

The State can not prove the Petitioner guilty "beyond a reasonable doubt", as the Montana Supreme Court demands in State v Price, 2002 Mt 284,¶33. The State's lack of evidence as demanded in Marble using the first four criteria of Clark concerning the new evidence attached clearly meets the courts stance on new evidence and the court should reverse this conviction.

In Medley v Runnels, "the elements of a state crime are determined by state law, and the state legislature's broad discreation to define the elements of a crime. Nevertheless, once a state's criminal laws are written, a defendent has the 'Due Process' right to insist that the state prove beyond doubt EVERY ELEMENT of the offense charged".

The State violated the Petitioner's Fourth Amendment right to Due Process by obtaining a search warrant illegally to obtain cell information that does not meet any element of the charges statute. The statute demands that the State produce the body of a deceased person to charge the statute of Homicide. That is the direct evidence demanded by the Montana Supreme Court in State v Weber, 112 Mont. 284, hense the State violated the Petitioner's Fourteenth Amendment Right to Due Process, by not producing the alleged victims body, as required as the very basic element of the crime charged herein, MCA: §45-5-102. Deliberate Homicide, "a person commits the offense of deliberate homicide if: (a) the person purposely or knowingly causes the death of another human being."

The State could not meet any of the above elements to §45-5-102:

The State did not prove the death of another human being

The State did not prove 'Intent' [Mensa Rea]

The State did not prove 'the Guilty Act' [Actus Rea]

This Petition and its attached exibits prove beyond doubt each of the Petitioners claims and that the Petitioner is Actually Innocent and wrongfully incarcerated. and that the conviction and sentence should be vacated, set aside and disregarded due to the true facts and caselaw herein that this court must abide by.

RELIEF

The Petitioner hereby requests that this Honorable Court dispose of this case and vacate the conviction of the Petitioner as illegal, based upon the claims and exibits contained herein that show beyond doubt that the Respondents and the State of Montana hav denied the Petitioner his rights as guaranteed by the United States Constitution. That this court release the Petitioner from the resultant wrongful sentence and incarceration, by granting this writ of Habeas Corpus as is allowed under 28 USC §2254. That this court order the Respondent, Jim Salmonson, to release the Petitioner without delay in the 'Interest of Justice'

Dated this 28 day of August , 2018.

CODY WAYNE JOHNSON
% Montana State Prison
700 Conley Lake Rd.
Deer Lodge, Montana
59722

CERTIFICATE OF SERVICE:

The Petitioner will mail through the prison mail system, a true and accurate copy of this Petition for Writ of Habeas Corpus to the following, to the best of his ability.

Cody Wayne Johnston

Montana Attorney General
Tim Fox
P.O.BOX 201401
Helena, MOntana  59620

-17-